IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2004, Session

## HERMAN TAYLOR v. STATE OF TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 00-209-II     Carol L. McCoy, Chancellor**

_____

**No. M2002-02608-COA-R3-CV - Filed March 17, 2005**

_____

This is an action for breach of contract filed by Plaintiff/Contractor against the State, together with a Counterclaim and a Third-Party Complaint against the surety company for Plaintiff/Contractor. The trial court granted partial summary judgment to Plaintiff as to liability because the State had failed to comply with the requirements of Tennessee Rule of Civil Procedure 56 in answering Plaintiff's Motion for Summary Judgment. After much procedural combat, the trial court adhered to its ruling on the Motion for Summary Judgment, dismissed the Third-Party Complaint against the surety and the Counterclaim of the State against Plaintiff, held that Plaintiff had failed to prove any damages against the State, and sustained the Motion of the State for an involuntary dismissal of Plaintiff's entire claim, taxing the costs to Plaintiff. We find that the trial court erred in granting summary judgment to Plaintiff as to liability without considering documentation and evidence submitted by the State subsequent to the initial non-final order granting partial summary judgment as to liability. It follows that the court also erred in dismissing the Counterclaim and the Third-Party Complaint against the surety. The grant of partial summary judgment as to liability is reversed, and the case is remanded to the trial court for trial on the merits.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and HERSCHEL P. FRANKS, P.J., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellant, Herman B. Taylor.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; S. Elizabeth Martin, Sr. Counsel; and William J. Marett, Jr., for the third-party appellants, State of Tennessee and The Board of Regents.

Brett A. Oeser, Nashville, Tennessee, for the appellee, North American Specialty Insurance Company.

**OPINION**

In this breach of contract action, it is necessary to set forth a detailed chronology of the procedural history evidenced by the trial court proceedings.

Herman B. Taylor, d/b/a Herman Taylor Construction Company, filed suit on January 20, 2000, against the State of Tennessee and The Board of Regents in the Chancery Court of Davidson County. His claim was based on a March 5, 1996, contract to renovate an addition to the Tennessee Technology Center located in Dickson, Tennessee. He alleged negligence on the part of Defendants because the architect improperly designed portions of the project causing delays in the project, as well as additional expense. He further alleged that, on May 17, 1997, he was wrongfully terminated and suffered damages in the amount of $736,323.53, for which he demanded judgment against Defendants.

On April 5, 2000, Defendants answered asserting numerous defenses and essentially denying any liability to Plaintiff. Defendants then asserted a Counterclaim against Plaintiff and a Third-Party Complaint against North American Specialty Insurance Company, surety for Plaintiff on the project. This Counterclaim asserted material breaches of contract by Plaintiff in failing to properly manage the project, failing to provide qualified workers, failing to pay some subcontractors and suppliers, and failing to abide by project scheduling. This Counterclaim and Third-Party Complaint asserted that Plaintiff/Counter Defendant and Third-Party Defendant were jointly liable to the State for damages in the amount of $1,045,351.50. On July 6, 2000, Herman Taylor and North American Specialty Insurance Company answered these charges against them denying any liability to the State of Tennessee.

On May 22, 2002, Plaintiff filed a Motion for Summary Judgment on the Counterclaim of Defendant and on the issue of liability in Plaintiff's Complaint. This Motion was supported by the Affidavit of Herman Taylor together with a Statement of Undisputed Material Facts with specific reference to the record to support such facts.

The response of the State to this Motion for Summary Judgment did not comply with the provisions of Tennessee Rule of Civil Procedure 56, and such failure was of great concern to the trial judge, as reflected in her Memorandum and Order of July 2, 2002 ("July 2, 2002 Order"). The trial court observed:

> On June 21, 2002, the State of Tennessee filed a response to the motion and the affidavit of Jerry Preston. On June 24, 2002, the State filed another document that purported to be an affidavit; it had no oath and therefore, was insufficient to constitute an affidavit. Attached to this last filing was another document entitled WMB Report and numerous exhibits. The attached exhibits were copies of correspondence in 1997 between Mr. Taylor and the architect regarding various disputes. On June 24, 2002, the State also filed a Response to Mr. Taylor's Statement of Material Facts Not In Dispute. This Response did not comply with Rule 56.02. The State responded to many of Mr. Taylor's facts by simply denying the factual statement without reference to any specific part of the record. Many of

the responses stated "Denied. See WMB report." In one instance, the State responded to undisputed fact No. 14 as follows: "See response to Paragraph 14." The State's response did not contain a specific reference to the record in order for the Court to determine which facts supported its denial. The State filed no memorandum of law to assist the Court in trying to utilize the material that the State had filed.

After discussing at length the shortcomings of the State's response to the Motion for Summary Judgment, the trial court held: "For the foregoing reasons and after careful review and reconsideration of the record, partial summary judgment on the issue of liability is entered on behalf of Mr. Taylor. Further, the State's counterclaim alleging breach of contract and negligence on behalf of Mr. Taylor is dismissed. The issue of damages shall be heard on July 29, 2002."

It is from this point forward that the case becomes a procedural mine field. Having granted partial summary judgment as to liability in favor of Plaintiff in its July 2, 2002 Order, the corresponding dismissal of the State's Counterclaim necessarily had to follow. As the grant of partial summary judgment and the dismissal of the Counterclaim did not resolve all issues between the parties, the July 2, 2002 Order could not be a final judgment in the absence of a Tennessee Rule of Civil Procedure 54.02 designation, which was not contained in the July 2, 2002 Order.

North American Specialty Insurance Company was quick to respond to the July 2, 2002 Order when, on July 5, 2002, it filed a Motion to Dismiss asserting that, as a matter of law, the Third-Party Complaint should be dismissed.

On July 17, 2002, the State filed a Tennessee Rule of Civil Procedure 60.02 Motion for Relief from Judgment ("Rule 60.02 Motion") seeking to have the July 2, 2002 Order set aside and the case set for trial on its merits. This Rule 60.02 Motion was accompanied by extensive evidentiary materials asserting material issues of disputed fact which were obviously intended to cure the defects in the State's response to the original Motion for Summary Judgment. These materials included the Affidavit of Jerry Preston, an architect, to the effect that there was nothing wrong with the architectural drawings in the contract and a 23-page response to Plaintiff's Statement of Undisputed Facts filed pursuant to Rule 56.03. This response disputes 30 of the 37 undisputed facts asserted in Plaintiff's Statement of Undisputed Facts.

Extensive briefing by the parties addressing the criteria for granting Rule 60.02 motions preceded the hearing on July 22, 2002, resulting in an Order of August 21, 2002, ("August 21, 2002 Order") of the trial court reaffirming its grant of partial summary judgment on the basis that:

> The Court finds that Tennessee Rules of Civil Procedure Rule 60.02(5) requires that clear and convincing evidence be submitted before Rule 60 relief can be granted. The Court finds that the State of Tennessee and The Tennessee Board of Regents have not submitted clear and convincing evidence in support of their Motion. Therefore, it is **ORDERED, DECREED,** and **ADJUDGED** that the Rule 60.02(5) Motion is **DENIED**.

On August 22, 2002, the trial court entered another Order ("August 22, 2002 Order") granting the Motion of North American Specialty Insurance Company to dismiss the Third-Party Complaint against it. However, this Order contained a finding pursuant to Rule 54.02 that the Order was final as to North American Specialty Insurance Company and that there was no just reason for delay.

On that same day, the State filed its Motion to Revise Non-Final Order, or In the Alternative, to Alter or Amend Final Judgment ("Motion to Revise") regarding both the court's grant of partial summary judgment and dismissal of the Third-Party Complaint. This Motion to Revise was filed pursuant to Tennessee Rule of Civil Procedure 54.02 and, in the alternative, 59.04. On September 13, the trial court heard the Motion to Revise and entered an Order on September 25, 2002 ("September 25, 2002 Order"), providing:

> This cause came before the Court on the 13th day of September, 2002, upon motion of the **STATE OF TENNESSEE** and the **TENNESSEE BOARD OF REGENTS** [State Defendants], pursuant to TENNESSEE RULES OF CIVIL PROCEDURE 54.02 or, in the alternative, Rule 59.04, seeking the Court to revise, or alter or amend, the order granting Plaintiff partial summary judgment, and to alter or amend the Order dismissing State Defendants' claims against Defendant NORTH AMERICAN SPECIALTY INSURANCE COMPANY, the responses in opposition to same of Plaintiff and Counter-Defendant Herman B. Taylor and Defendant North American Specialty Insurance Company, the arguments of counsel, and the entire record of this cause, from all of which the Court finds as follows:
>
> The oral ruling of the Court has been transcribed by a certified court reporter and is attached hereto and incorporated by reference, as if fully set forth *verbatim*, herein.
>
> As to the merits of the State Defendant's motion, the Court finds that neither Rule 54 nor Rule 59 give this Court authority to consider State Defendants' AMENDED AND SUPPLEMENTARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE, AFFIDAVIT OF KEN SWANN, Portions of the DEPOSITION OF JERRY PRESTON taken on February 15, 2002, and AFFIDAVIT OF JERRY PRESTON, submitted by State Defendants following the Court's July 2, 2002 Order granting Plaintiff partial summary judgment.
>
> Defendants State of Tennessee and Tennessee Board of Regent's MOTION TO REVISE NON-FINAL ORDER, OR IN THE ALTERNATIVE, TO ALTER OR AMEND FINAL JUDGMENT is therefore, **DENIED.**

### TENNESSEE RULES OF APPELLATE PROCEDURE 9 CERTIFICATION

The Court **grants** State Defendants' oral motion for permission to appeal, pursuant to Rule 9 of the TENNESSEE RULES OF APPELLATE PROCEDURE, its ORDER granting Plaintiff partial summary judgment, dated July 2, 2002, and the Court's denials of State Defendants' MOTION FOR RELIEF FROM JUDGMENT, pursuant to TENNESSEE RULE OF CIVIL PROCEDURE 60.02, and the State Defendants' MOTION TO REVISE NON-FINAL ORDER, OR IN THE ALTERNATIVE, TO ALTER OR AMEND FINAL JUDGMENT, pursuant to TENNESSEE RULES OF CIVIL PROCEDURE 54.02 or, in the alternative, Rule 59.04, for the following reasons: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; and (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed. The Court finds that if its prior rulings are in error, then it should consider the previously not considered documents submitted by State Defendants. If these documents had been properly before the Court at the hearing on the motion for summary judgment, said documents may contain facts that establish that there are questions of fact on the issue of liability remaining, and that trial was necessary to resolve these matters. In addition, this Court has previously held that its ORDER grating [sic] Defendant North American Specialty Insurance company's MOTION TO DISMISS is a final order, for which State Defendants may file an appeal as of right. Therefore, to avoid duplicative litigation and appeals, and to resolve all issues at once, it is in the interests of justice and judicial economy that State Defendants be granted permission to file an interlocutory appeal.

Such being the essential record in this case, the State filed its application, pursuant to Tennessee Rule of Appellate Procedure 9, for an interlocutory appeal. This application was denied by this Court on October 28, 2002, by Order ("October 28, 2002 Order") asserting:

Having reviewed the application, we cannot conclude that an interlocutory appeal is necessary to prevent needless, expensive and protracted litigation or to prevent irreparable injury. However, the State defendants have filed a notice of appeal from the final judgment dismissing their claims against North American, and an appeal as of right from that order is, presumably, proceeding. We concur with the trial court's conclusion that resolving all issues at once will avoid duplicative litigation and appeals and further the interests of justice and judicial economy. Accordingly, the appeal as of right from the dismissal of the claims against North American should be stayed pending entry of a final judgment regarding the remaining claims between the plaintiff and the State defendants. Should an appeal be filed from such a final judgment, it should be consolidated with the appeal from the dismissal of the claims against North American.

-5-

The Rule 9 application of the State having been denied, the case was remanded for trial of the only issue left between the parties, the amount of damages, if any, to be awarded to Mr. Taylor.

After a number of procedural struggles, the case came on for hearing on June 17, 2003, and, on June 27, 2003, the trial court entered the following Final Order:

> This cause having come before the Court on the 17th day of June, 2003, for a hearing on the matter of Plaintiff's damages by virtue of this Court's prior ruling on liability that arose out of a summary judgment sought by Plaintiff in which the State Defendants failed to adequately respond to the motion.
>
> Upon the close of Plaintiff's proof, the State Defendants moved for an involuntarily dismissal asserting that Mr. Taylor had failed to prove in any credible way and with any certainty the damages that he asserted in his complaint. Due to this Court's prior ruling, Mr. Taylor was entitled, through an offer of proof, to submit any documentation that might persuade the Court that he has damages for which he is entitled to be compensated. The Court has been underwhelmed by the lack of any documentation to support the allegations made by Mr. Taylor with regards to any damages that he has sustained. Mr. Taylor's testimony is all that he presented to the Court in support of his damages claim.
>
> The Court concludes that it cannot put any weight into Mr. Taylor's testimony and finds him to be not credible on the testimony with regards to damages. Based on the evidence that has been submitted, it appears that Mr. Taylor was not forthright in talking about his prior background. That was never explained, nor did his counsel inquire into it to allow Mr. Taylor an opportunity to explain. Therefore the Court finds that Plaintiff Herman Banks Taylor is the one and same person as identified in the Department of Correction records. That proof weakens what credibility the Court might have otherwise put in Mr. Taylor's testimony, but was not the main factor upon which the Court relied in determining the credibility of Mr. Taylor. Mr. Taylor's testimony could best be described as consisting solely of generalizations. His memory was faulty. He was not consistent in his testimony. The figures that Mr. Taylor testified to as to the amount that he is due were incomprehensible to the Court. Mr. Taylor sought damages that have labels unknown to the Court.
>
> Therefore, the Court finds that Mr. Taylor has not proven damages for unpaid change orders. He has not proven any damages for what he asserts is a wrongful termination. He has not proven any damages for delay, and in this instance, the Court is unaware that one would recover damages for delay since this is a contract dispute, and such requires liquidated damages which are capable of determination if proper, reasonable evidence is submitted. Mr. Taylor has not proven other consequential damages. There is no reliable proof in the record for which the Court can award Mr. Taylor any lost profit.

Accordingly, **at the close of Plaintiff's proof, the Court granted State Defendants' motion for involuntary dismissal on all claims for unpaid change orders, wrongful termination, delays, consequential damages, or lost profit.**

The Court, however, found that there was a retainage account that was accumulated by reserving five [5] percent of any moneys due Mr. Taylor when he submitted an application for payment. The proof reflects that there were twelve [12] applications for payment and that payments were made pursuant to those applications, with a retainage amount of $115,021.58. Mr. Taylor takes the position that his money was wrongfully retained by the State. At the close of Plaintiff's proof, the Court could not conclude that the State Defendants had clearly demonstrated that the retainage was used to pay the subcontractors. Although it is clear is [sic] that there was a retainage account and that the State took possession of those funds, testimony as to how those funds were used had not been put into the record. State Defendants were required to submit proof on this issue, and as to this issue, the Court reserved its decision on the State Defendants' motion for involuntary dismissal.

Having then heard the State Defendants' proof as to how the retainage funds were used, the Court finds that State Defendants have made a showing of specific amounts that constitute liquidated damages that have been paid by State Defendants and that these liquidated damages more than exceed the amount of the retainage that was in the retainage account at the time of termination. The funds that were being held in the retainage account for the contractor were used by State Defendants to pay subcontractors and vendors who had completed work and who were entitled to be compensated for that work. The Court further finds that the complaint acknowledges that any moneys to which Mr. Taylor might be entitled in this lawsuit should be reduced by any amounts paid by State Defendants on behalf of the plaintiff. The retainage account was thus properly used in its entirety by State Defendants to pay subcontractors and vendors, and Plaintiff is entitled to no recovery of any funds that the State took possession of upon the termination of the contract.

**Therefore, the Court finds that the State Defendants' motion for an involuntary dismissal of all of Plaintiff's claims is appropriate. The Court grants the motion for involuntary dismissal, enters a judgment in favor of the State Defendants, and dismisses this action in its entirety.**

Finally, the Court finds that the Plaintiff instituted this lawsuit and had the primary burden of persuasion as to liability and with regards to proof of damages. Once having prevailed on the issue of liability through the motion for summary judgment, it was incumbent upon Mr. Taylor to put forth the very best case that he could. Finding that the presentation of Plaintiff's case was woefully lacking, the Court concludes that the costs of this matter should be assessed solely against the

Plaintiff. **The costs are assessed against the Plaintiff for which execution may issue if necessary.**

Since the State filed the first Notice of Appeal, it appears as the appellant in this Court, to which everybody except the surety complains.

On appeal, the State asserts four issues for review:

1.  Whether the Chancellor erred in granting Plaintiff's Motion for Partial Summary Judgment **solely** because State Defendant failed to fully comply with Rule 56 of the Tennessee Rules of Civil Procedure.

2.  Whether the Chancellor erred in granting Summary Judgment to Plaintiff who had not met his burden to establish that there was no genuine issue of material fact and that he was entitled to judgment in his favor as a matter of law.

3.  Whether the Chancellor abused her discretion by failing to consider documentation submitted by State Defendants in Support of Motions under Rule 54 and Rule 59.

4.  Whether the Chancellor's grant of Summary Judgment to the surety should be reversed.

Herman Taylor submits the following issues for review on appeal:

1.  The Trial Court Did Not Err in Granting The Plaintiff's Motion for Summary Judgment.

2.  The Trial Court Did Not Abuse Its Discretion In Allowing The State Additional Time To Respond To The Motion For Summary Judgment.

3.  The Trial Court Erred In Allowing The State To Setoff Damages.

4.  The Trial Court Erred In Not Awarding Damages To Mr. Taylor For Delay And Other Damages.

North American Specialty Insurance Company asserts the following issues on appeal:

I.  Whether the Chancellor properly granted partial summary judgment, dismissing the State's counterclaim against Taylor, when Taylor established that he was entitled to partial summary judgment, and the State failed to offer any evidence to dispute his contention.

II. Whether, having properly dismissed the State's counterclaim against Taylor, the Chancellor properly dismissed the State's third party claim against NASIC.

III. Whether the Chancellor properly denied the State's Motion for relief under Rules 54.02 and 59.04, when the State failed to demonstrate that it was entitled to such relief.

The difficulty facing this Court is that there was never a final judgment in this case until the Final Order of the court on June 27, 2003. Neither a Rule 60.02 motion nor a Rule 59 motion will lie prior to the entry of a final judgment. The grant of partial summary judgment to Plaintiff in the July 2, 2002 Order left open for future disposition the issue of Plaintiff's damages. In the absence of a Rule 54.02 designation by the trial court, such a judgment is not "final" for any purposes. Tennessee Rule of Civil Procedure 54.02 provides:

> **54.02. Multiple Claims for Relief.** — When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

The difficulties started when the State filed its Rule 60.02 Motion rather than a motion to revise under Rule 54.02. *See Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000). The parties and the trial court, thereafter, took the Rule 60.02 Motion literally and applied the narrow construction rule mandated by *Toney v. Mueller Co.*, 810 S.W.2d 145 (Tenn. 1991) and *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150 (Tenn.Ct.App. 1993).

> The issue is whether the affidavits demonstrate that the judgment entered was based upon a "mistake" within the meaning of rule 60.02, Tenn.R.Civ.P., which states in pertinent part:
>> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect.
>> Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order. Nor is the rule a mechanism

for use by a party who is merely dissatisfied with the result of a particular case.  Rule 60.02 is meant to be used only in those few cases that meet one or more of the criteria stated.  As recently stated by this Court, "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules."  *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990).  Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.

*Toney*, 810 S.W.2d at 146.

That the trial court applied this strict rule in disposing of the State's Rule 60.02 Motion is established in the August 21, 2002 Order wherein the court held: "The Court finds that Tennessee Rules of Civil Procedure Rule 60.02(5) requires that clear and  convincing evidence must be submitted before Rule 60 relief can be granted."

The Supreme Court held in *Harris v. Chern*:

Rule 54.02 requires that a judgment disposing of fewer than all of the claims or fewer than all of the parties is final only when the trial court makes "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Tenn. R. Civ. P. 54.02.  This determination is an "absolute prerequisite" to a final judgment in such a case.  *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983); *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 325 (Tenn. 1982) (addressing Rule 54.02 in its previous form at Tenn.Code Ann. § 27-305).  The record reveals no express determination of finality by the trial court in the initial grant of summary judgment.  Accordingly, the initial grant of summary judgment in this case was non-final and was subject to revision until it was expressly made final in accordance with Rule 54.02.

*Harris*, 33 S.W. 3d at 744.

The requirements of Rule 54.02 in this respect are so clear and unambiguous that "construction" of these provisions is neither warranted nor necessary.  Nonetheless, since the provisions are identical to the provisions of Federal Rule of Civil Procedure 54, federal case law interpreting the rule is persuasive authority in Tennessee.  *Bowman v. Henard*, 547 S.W.2d 527, 530 (Tenn.1977); *March v. Levine*, 115 S.W.3d 892, 908 (Tenn.Ct.App. 2003).

In addressing the exact issue that is before this Court, the Fifth Circuit Court of Appeals held:

This partial summary judgment order did not even determine Avondale's liability – there being no determination either of fault on its part or of causation – much less King's damages, and hence was interlocutory and not appealable.  *Cf.* Fed. R. Civ. P. 56(c) (summary judgment on liability alone "interlocutory in character").  Not only

is such an order not appealable, but it remains within the plenary power of the district court to revise or set aside in its sound discretion without any necessity to meet the requirements of Fed. R. Civ. P. 60(b).

*Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir. 1986).

The Fifth Circuit Court of Appeals again addressed the question in circumstances markedly similar to the case at bar.

> The district court allowed Chevron to file a motion for summary judgment, granted the motion, but deferred the question of amount to allow the parties an opportunity to reach an agreement. The judgment was only partial, the court reserving the jurisdiction over the unresolved issues. "An order of a district court granting partial summary judgment which leaves claims to be adjudicated may constitute a final order 'only upon an express determination that there is no just reason for delay and upon an express determination for the entry of judgment'." *Eudy v. Motor Guide, Herschede Hall Clock Co.*, 604 F.2d 17, 18 (5th Cir. 1979), Fed.R.Civ.P. 54(b), *Gonzales v. Texas Employment Commission*, 563 F.2d 776, 777 (5th Cir. 1977). There was no rule 54(b) certification rendering the judgment final in the instant case. Oil Well's cross claims, filed three months after the partial summary judgment, were filed while the matter was still within the jurisdiction of the district court. The motion was timely file. The contention of Teledyne that Oil Well was not a party to the action is devoid of merit. Oil Well was brought in as a third party defendant. Its attorney was present throughout the trial of the main demand.

*Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1240 (5Th Cir. 1980).

Since the trial court's July 2, 2002 Order contained no Rule 54.02 designation of finality, it was not a final order for any purposes under the express provisions of that rule. Treating the Rule 60.02 Motion as, in fact, a motion to revise under Rule 54.02, *See Harris*, 33 S.W.3d at 744, and *Savage v. Hildenbrandt*, No. M1999-00630-COA-R3-CV, 2001 WL 1013056 (Tenn.Ct.App. Sept. 6, 2001), the merits of the Rule 60.02 Motion should have been subjected to the *Harris* analysis rather than the Rule 60.02 analysis. Further, the August 21, 2002 Order overruling the Rule 60.02 Motion of the State was no more a final order than the July 2, 2002 Order. It contained no Rule 54.02 designation of finality, and the issue of damages remained to be tried.

So it is that the State's August 22, 2002, Motion to Revise cannot be considered, at least as to the State and Herman Taylor, to be a Rule 59.04 motion. As to those parties, it will be treated as another Rule 54.02 motion since the August 21, 2002 Order lacked finality. Since the August 22, 2002 Order dismissing North American Specialty Insurance Company did, in fact, contain a Rule 54.02 designation of finality, the State was left with little alternative but to file the August 22 Motion to Revise alternatively under Rule 59.04 in order to protect its rights against the surety.

In its September 25, 2002 Order denying both the State's Rule 54.02 motion and its alternative Rule 59.04 motion contained in the Motion to Revise, the trial court held:

> As to the merits of the State Defendants' Motion, the Court finds that neither Rule 54 nor Rule 59 give this Court authority to consider State Defendants' AMENDED AND SUPPLEMENTARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE, AFFIDAVIT OF KEN SWANN, Portions of the DEPOSITION OF JERRY PRESTON taken on Feb. 15, 2002, and AFFIDAVIT OF JERRY PRESTON, submitted by State Defendants following the Court's July 2, 2002 Order granting Plaintiff partial summary judgment.

The trial court is in error in so holding. No final judgment had yet been entered, and it is clear that "Rule 54.02 confers upon the trial court 'the privilege of reversing itself up to and including the date of entry of a final judgment'". *Harris*, 33 S.W.3d at 744.

The true test applicable under these conditions is set forth clearly by the Supreme Court.

> When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

> Accordingly, we hold that the "newly discovered evidence" standard need not be satisfied before a trial court revises a partial summary judgment under Rule 54.02 on the basis of additional evidence. When additional evidence is offered by a litigant to overcome a grant of summary judgment pursuant to Rule 54.02, trial courts must undertake the above-stated balancing analysis and should make adequate findings of fact and conclusions of law on the record to support their rulings.

*Harris*, 33 S.W.3d at 745 (citations omitted). Just as the "newly discovered evidence" standard need not be satisfied before a trial court revises a partial summary judgment under Rule 54.02 on the basis of additional evidence, so the restrictive standard of Rule 60.02 does not have to be met as to such additional evidence.

It is clear, therefore, that as in *Harris*, the grant of partial summary judgment in this case must be reversed. We perceive no reason, however, to remand the case as was done in *Harris* for further trial court consideration of the post-partial summary judgment evidence presented by the State. In the Order of September 25, 2002 granting the Tennessee Rule of Appellate Procedure 9

Interlocutory Appeal, the trial court asserted, "If these documents had been properly before the Court at the hearing on the motion for summary judgment, said documents may contain facts that establish that there are questions of fact on the issue of liability remaining, and that trial was necessary to resolve these matters." The evidence on which the trial court spoke is in the record and before this Court for appellate review. It is clear from the evidence presented that disputed questions of material fact as to liability exists and summary judgment as to that issue was improperly granted.

When this Court entered its October 28, 2002 Order denying the State's application for a Rule 9 interlocutory appeal, we recognized the procedural problems resulting from the trial court's designation of finality in its August 22, 2002 Order dismissing the Third-Party Complaint against North American Specialty Insurance Company. We held, "Accordingly, the appeal as of right from the dismissal of the claims against North American should be stayed pending entry of a final judgment regarding the remaining claims between the plaintiff and the State defendants." Since the dismissal of the Counterclaim of the State against Plaintiff and the dismissal of the Third-Party Complaint against North American were predicated upon the erroneous grant of partial summary judgment to the Plaintiff as to the liability of the State, it follows that the dismissal of the Counterclaim and the Third-Party Complaint must be reversed.

This leaves us with the very troublesome problem of the issues asserted on appeal by Plaintiff, Herman Taylor. With the State's Counterclaim and the Third-Party Complaint against the surety effectively removed from the case by the July 2, 2002 Order granting partial summary judgment to Plaintiff as to liability, the case proceeded on the issue of Plaintiff's damages in a hearing on June 17, 2003. The burden was upon Plaintiff to establish his damages, and the level of frustration besetting the trial court is reflected in its Final Order of June 27, 2003, wherein the defendant's Motion for Involuntary Dismissal was sustained.

In the present state of the record, efforts to effect proper appellate review are an exercise in futility. Between the rulings of the trial court limiting the scope of evidence because of Plaintiff's failure to make proper discovery and the near total failure to correlate the uncorraborated testimony of Herman Taylor with the myriad of exhibits offered, we are unable to make sense out of the record on appeal.

What was bound to happen was clearly foreseen by the trial court prior to the beginning of Mr. Taylor's testimony. The record reflects:

> THE COURT:     All right. Let's do that then.
> This is a motion in limine filed by the State to enter an order prohibiting the plaintiff from relying upon any documentation obtained from Jerry Preston or Ken Swann pursuant to the subpoena served after the June 6, 2003 hearing.
>
> With regards to the plaintiff's offer of proof, the plaintiff is entitled, based on my prior ruling, to make an offer of proof with regards to the

documents that the plaintiff has as to how he calculated his damages. The documents should be the ones that were used to prepare the summary statements.

At the time that we were here before, I inquired as to how the summaries were prepared. Mr. Preston, you advised me that either you or someone in your office had used the documents available to you to prepare those summaries.

It is my expectation through that order that you will be allowed to make an offer of proof.

Typically, an offer of proof is made with me off of the bench. I think under these circumstances I may have to stay on the bench. But you will be allowed to do that. However, you are only going to be allowed to do that in the same way that you prepared the summaries, and that is either through your witnesses or your assistant or whoever helped you and the documents that were available to you in your office, because that was the intent of the offer of proof.

You brought to the deposition these summaries as to how you calculated the damages. Mr. Marett had a right to explore how that was done. And he had requested that whatever documents you intended to rely upon be brought to the deposition. For reasons unbeknownst to me, that was not done.

As a consequence, I am not going to permit documents that were not identified in the deposition to be introduced now. That's not the proper way to conduct discovery. The State had requested all of the documents. They had a right to do it. All the documents were presented to Ms. Steele. They were not Bates stamped. They were not identified. They weren't collated. They weren't segregated. They were just delivered.

In order to be able to determine and make sense out of these documents, Mr. Marett wanted to depose your client and asked him to bring the documents that had been furnished. I suspect that Mr. Marett had all the documents and tried to make some sense out of them before he wanted to depose your clients. But your client needed to bring those records to the deposition, and he didn't.

You asserted that you had prepared these summaries, and it is on that basis that he filed his motion for sanctions. I've made the ruling. At this time I am going to grant the order that with regards to your proof that may be submitted pursuant to my ruling and that is whatever documentation you intend to supply as an offer of proof will not be through Jerry Preston or Ken Swann since they did not help you prepare the summaries.

MR. PRESTON: Your Honor, does that address – your order talked about the documents which were identified. And the ones that I am concerned about are the ones that – payment applications which we submit don't fall under that category, because they were in the summaries specifically identified by number. I don't think there's any question those were in the State's possession at the time and should not, therefore, be excluded.

Is it your ruling that those documents are excluded even though they were identified?

THE COURT: Mr. Preston, you've asked me a question that I'm going to have to have a little more assistance on before I can answer, but I would like to do these things in an orderly fashion. So what I've got right now is the motion in limine to prohibit the plaintiff from relying on any documentation obtained from Jerry Preston or Ken Swann pursuant to the subpoenas. That's the ruling.

The answer is yes, I am going to prohibit you from relying on any documentation obtained from Jerry Preston or Ken Swann pursuant to the subpoenas. All right. I have just gone through all the documents that you requested, and by and large it looks like you have most of those documents in your possession. You will not be able to call Ken Swann or Jerry Preston to the stand during your offer of proof.

Now, with regards to the question that you just posed to me, you have – and Mr. Marett not quite as long – been involved in this lawsuit. I am basically uneducated with regards to the facts in this lawsuit. I have minimal knowledge of this lawsuit, and it is for a variety of reasons.

When the motion for summary judgment was filed, you benefited [sic] because Ms. Steele was in a position that she did not properly respond to the motion for summary judgment. I was unable to go through all the documents that she filed and make sense of them.

You now ask me a question about documents that I have not been able to make sense of because I haven't had the time nor have I had the benefit of preliminary motions that would facilitate my understanding of what pay application documents are versus the equipment and fuel cost/loss of productivity documents or the documents that purport to represent delays caused due to architectural errors. I have no idea how to segregate whatever documents there are and how to answer your question as to what you mean when you say, "Do the pay application documents fall under a certain category for exclusion or inclusion?"

If I knew what the documents were, if I had the ability to look at them and read them – and I really do take the time, if it's presented in a proper way, to try and understand what the proof will be either before trial or during trial. I know what a pay application looks like, but it's not my duty to ferret it out.

I don't know that I could clearly say what is an equipment documentation or a fuel cost documentation if they are all run together. I know what a bill looks like for gas; I could do that. But that's not my responsibility. And that's why I say you have an uneducated judge sitting here, because I don't have the benefit of any preliminary motions that help me gain an understanding of what the documents are that are going to be tendered to prove the damages. And that is of concern to me.

Proving liability is only one half of a lawsuit. The other half of a lawsuit is proving the damages to which you are entitled. This is a very important portion of the lawsuit.

For all practical purposes, the only evidence offered by Plaintiff was the testimony of Mr. Taylor, and quite apart from the credibility issues from which he suffered in the trial court, his testimony demonstrated a rather marked lack of familiarity with his own records and, by and large, was couched in abstract generalities.

On appeal of the damages issues, we are left in something of a quandary. Based on the record we have, it would be easy enough to sustain the action of the trial court in the involuntary dismissal of Plaintiff's claim because of the total failure of his proof as to damages. We have a case, however, which must go back to the trial court for further proceedings because of errors, not all of which can be laid at the door of Plaintiff. It was, after all, the State of Tennessee that filed the grossly inadequate response to Plaintiff's Rule 56 Motion for Summary Judgment and, after the partial summary judgment was granted, responded with a Rule 60.02 Motion. The trial court, taking its cue, in part, from the State's Rule 60.02 Motion, applied the restrictive criteria of a Rule 60.02 motion rather than the criteria of *Harris v. Chern* under Rule 54.02. The resulting overruling of the State's Rule 60.02 Motion under those restrictive criteria buttressed the erroneous dismissal of the Counterclaim and the Third-Party Complaint. Sending the case back to the trial court for trial on the Counterclaim and the Third-Party Complaint without regard to Plaintiff's allegation of damages involves a less-than-satisfactory result.

This court has the statutory power to remand cases when we determine that complete justice cannot be done on appeal and when the record indicates that more satisfactory evidence can be presented which will enable the trial court to render a more just decision. *See* Tenn. Code Ann. § 27-3-128 (1980); *Haury and Smith Realty Co. v. Piccadilly Partners I*, 802 S.W.2d 612, 616 (Tenn.Ct.App. 1990).

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 250 (Tenn.Ct.App. 2000).

We choose to vacate the judgment as to Plaintiff's damages and remand the case to the trial court for trial on all issues made by the pleadings. Such proceedings on remand will be without prejudice to the trial court's previous ruling relative to Plaintiff's failure in response to discovery. We might add that, if Plaintiff cannot do something to improve the quality of his proof as to damages, the road ahead is effectively blocked.

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Costs of the cause are taxed equally to Herman Taylor and the State of Tennessee.

_____
WILLIAM B.CAIN, JUDGE